SIGNED this 1st day of March, 2012

                                        Marcia Phillips Parsons
                                UNITED STATES BANKRUPTCY JUDGE

_____

[This opinion is not intended for publication as the precedential effect is deemed limited.]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| In re<br><br>    MARK EDWARD SALYER,<br><br>                            Debtor. | No. 10-51717<br>Chapter 7 |
| PATSY A. HOLT and LETITIA A. SMITH,<br><br>    Plaintiffs,<br><br>vs.<br><br>MARK E. SALYER,<br><br>    Defendant. | <br><br><br><br>Adv. Pro. No. 10-5098 |

**M E M O R A N D U M**

APPEARANCES:

    Sunny R. Sandos, Esq.                         Mark E. Salyer
    Milligan & Coleman                           Post Office Box 1811
    Post Office Box 1060                        Kingsport, Tennessee 37662
    Greeneville, TN 37744                     *Defendant pro se*
    *Attorney for Plaintiffs*

**Marcia Phillips Parsons, United States Bankruptcy Judge.** In this adversary proceeding, the plaintiffs Patsy A. Holt and Letitia A. Smith seek a judgment against the *pro se* debtor Mark Edward Salyer and a determination that the judgment is nondischargeable under 11 U.S.C. § 523(a)(2)(A), (4), and (6). Alternatively, the Plaintiffs request denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(3), (4)(A), or (5). Presently before the court is the Plaintiffs' motion for summary judgment as to their nondischargeability claims. The Debtor has not responded to the motion. Because the Plaintiffs have demonstrated that there is no genuine dispute as to any material fact and that they are entitled to nondischargeable judgments against the Debtor as a matter of law, their motion for summary judgment will be granted, and judgments entered in their favor. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

I.

The Debtor filed a voluntary petition for bankruptcy relief under chapter 7 on July 6, 2010. Thereafter, on October 8, 2010, Plaintiffs timely commenced this action. After counsel for the Debtor was permitted to withdraw, the Debtor, appearing *pro se*, filed an answer denying that the Plaintiffs were entitled to any relief. On March 4, 2011, this court entered a scheduling order that, *inter alia*, set the deadline for filing dispositive motions and specifying that the Debtor would have 21 days in which to respond to any such motion. The order also provided that: "The failure to respond will be deemed an admission that the motion should be granted."

On January 9, 2012, the Plaintiffs filed the motion for summary judgment that is presently before the court. The motion was accompanied by the Plaintiffs' statement of undisputed material facts as required by E.D. Tenn. LBR 7056-1(a), an affidavit from each of the Plaintiffs, and excerpts from the transcript of the Debtor's deposition. Subsequently, on January 18, 2012, the Plaintiffs filed a brief in support of their motion. Consistent with the scheduling order entered in this proceeding, E.D. Tenn. LBR 7007-1(a) provides that a party opposing a motion in an adversary proceeding must file a response within 21 days after the filing of the motion, and that "[a] failure to respond timely will be construed to mean that the respondent does not oppose the relief requested by the motion." Similarly, E.D. Tenn. LBR 7056-1(a) states that any response to a motion for summary judgment must be accompanied by a response to the movant's statement of undisputed

material facts. The rule further states that "[a]bsent a response in accordance with the requirements of this subdivision, the material facts set forth in the movant's statement will be deemed admitted."

The Debtor has not responded to Plaintiffs' motion for summary judgment nor to Plaintiffs' statement of undisputed material facts, although the time for doing so has now expired. Accordingly, pursuant to the scheduling order and the local rules of this court, the court concludes that the Debtor does not oppose entry of summary judgment in Plaintiffs' favor as to their nondischargeability claims. Similarly, pursuant to the local rules, the material facts set forth in Plaintiffs' statement of undisputed material facts are deemed admitted. Notwithstanding the lack of a response from the Debtor, the court must still determine whether the established facts entitle the Plaintiffs to summary judgment as a matter of law. *See* Fed. R. Civ. P. 56.

## II.

The Debtor served as an investment representative and authorized agent for MetLife Securities, Inc. and Metropolitan Life Insurance Company, entities in which the Plaintiffs invested, or attempted to invest, funds through services provided by the Debtor. Additionally, the parties were related by marriage. Plaintiffs Patsy Holt and Letitia Smith are mother and daughter respectively, and the Debtor was married to Ms. Holt's daughter and Ms. Smith's sister.

Specifically as to the claims of Ms. Holt against the Debtor, she states the following in her affidavit:

> From 2000 through 2006, Salyer while an authorized representative of MetLife Securities, Inc. forged my signature in order to steal and misappropriate $1,500,881.29 from my MetLife accounts in which Salyer managed. Of this amount, $598,500.00 was stolen through forged IRA distribution forms, $394,434.90 was stolen through forged checks from MetLife account 5GW009931, $230,000.00 was stolen through forged checks from MetLife account 5GW008578, $179,554.07 was stolen through forged checks from MetLife account 5ML049324, $9,758.52 was stolen through forged checks from MetLife account 5ML114649, and $88,633.80 was stolen through other forged MetLife checks from my accounts.

Based on this affidavit and the testimony of the Debtor at his deposition, the Plaintiffs' statement of undisputed material facts recite that Ms. Holt invested approximately $1,821,578.68 with the Debtor during his employment with MetLife from 2000 through 2006, that she entrusted

the Debtor to invest these funds through the purchase of various MetLife products and the opening of various MetLife accounts; and that she never gave the Debtor permission to sign her name to any document, account transaction, financial instrument, or check. Ms. Holt also did not give the Debtor a power of attorney to act on her behalf. The Plaintiffs' statement of undisputed material facts also states that the Debtor forged Ms. Holt's signature in order to misappropriate at least $1,500,881.29 from her MetLife accounts which he managed, that he used forged IRA distribution request forms and checks in order to misappropriate these funds, and that he forged her signature on checks from her Eastman Credit Union checking account. According to the statement, the funds diverted from the Eastman Credit Union account were used for the benefit of the Debtor and were never delivered to Ms. Holt.

With respect to the claims of Ms. Smith against the Debtor, she states the following pertinent facts in her affidavit:

> I inquired of Defendant Mark E. Salyer regarding the investment of funds for my children's college education through an investment sponsored by Metropolitan Life Insurance Company . . . [and] thereafter wrote and delivered a check for . . . $126,000.00, at the direction of, and in reliance upon the representations of Salyer. . . . The money was specifically directed by me to be deposited into an authorized MetLife investment. . . . Salyer instructed me to make my check payable to Horizon Holdings, Inc. I did not know that Horizon Holdings, Inc. was not an affiliated MetLife company . . . [and] Salyer . . . did not disclose to me that Horizon Holdings, Inc. was in fact an entity owned and/or controlled by [him], which was not an investment plan sponsored by any MetLife affiliated company. . . . I have received no reimbursement for her [sic] losses.

Based on this affidavit and the Debtor's deposition transcript, the Plaintiffs' statement of undisputed material facts recite that Ms. Smith approached the Debtor regarding the investment of funds for her children's college education through an investment plan sponsored by MetLife; that she provided the Debtor with a $126,000 check, which she directed to be deposited in an authorized MetLife investment; and that the check was made payable to Horizon Holdings, Inc. on the Debtor's instruction. The Debtor did not disclose and Ms. Smith did not know that Horizon Holdings, Inc. was not an affiliated Metlife company or an investment plan sponsored by a MetLife affiliated company, and that it was in fact an entity owned and/or controlled by the Debtor. The statement also sets forth that the Debtor cashed Ms. Smith's check and intentionally used the funds for a

4

purpose other than that for which the funds were entrusted, and that Ms. Smith has received no reimbursement for her losses.

II.

Fed. R. Civ. P. 56(a), as incorporated by Fed. R. Bankr. P. 7056, provides that "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought" and that the "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). The moving party bears the burden of proving that, based upon the record presented to the court, there is no genuine dispute concerning any material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986); *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). The burden then shifts to the nonmoving party to come forward with specific facts showing a genuine issue for trial. *Merriweather v. Zamora*, 569 F.3d 307, 313 (6th Cir. 2009). Reliance solely on allegations or denials contained in the pleadings or a "mere scintilla of evidence in support of the nonmoving party will not be sufficient." *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006); *see also Matsushita Elec. Indus. Co.,Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986). The facts and all resulting inferences are viewed in a light most favorable to the nonmovant, and the court decides whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. Nevertheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 474 U.S. at 587 (citations omitted).

III.

In their motion for summary judgment, the Plaintiffs seek a determination of nondischargeability under three subsections of § 523(a) of the Bankruptcy Code. Pursuant to the following provision, excluded from the discharge of an individual debtor is any debt:

5

>    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>
>    > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]
>
>    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; [or]
>
>    (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a). Under § 523(a), the Plaintiffs bear the burden of proving each of the elements of nondischargeability by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654 (1991). Moreover, exceptions to a debtor's discharge are to be strictly construed against the creditor. *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998) (citing *Manufacturer's Hanover Trust v. Ward (In re Ward)*, 857 F.2d 1082, 1083 (6th Cir. 1988)). "However, the relief provided by the Bankruptcy Code is intended only for the 'honest but unfortunate' debtor and not to protect perpetrators of fraud or those who engage in egregious conduct." *Custom Kilns v. Pierron (In re Pierron)*, 448 B.R. 228, 236 (Bankr. S.D. Ohio 2011) (citing *Grogan*, 498 U.S. at 287).

Both Plaintiffs assert that their claims against the Debtor are nondischargeable under all three provisions: actual fraud under § 523(a)(2)(A); fraud while acting in a fiduciary capacity, embezzlement, and larceny under § 523(a)(4); and willful and malicious injury under § 523(a)(6). As discussed hereafter, the court concludes with respect to the claims of Ms. Holt that the record establishes embezzlement under § 523(a)(4). As to Ms. Smith's claims, the court concludes that the record before it demonstrates that the Debtor obtained money through false pretenses or a false representation under § 523(a)(2)(A).

Addressing first the embezzlement issue, as stated by the Sixth Circuit, "[f]ederal law defines 'embezzlement' under section 523(a)(4) as 'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.' " *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996) (quoting *Gribble v. Carlton (In re Carlton)*, 26 B.R. 202, 205 (Bankr. M.D. Tenn. 1982)). For purposes of § 523(a)(4), "[a] prima facie case of embezzlement requires the following three elements: '(1) property owned by another

is rightfully in the possession of a bankruptcy debtor; (2) the bankruptcy debtor appropriates such property to a use other than the use for which the property was entrusted to the bankruptcy debtor; and (3) circumstances indicating fraud.'" *WebMD Practice Servs., Inc. v. Sedlacek (In re Sedlacek)*, 327 B.R. 872, 880 (Bankr. E.D. Tenn. 2005) (quoting *U-Save Auto Rental of Am. v. Mickens (In re Mickens)*, 312 B.R. 666, 680 (Bankr. N.D. Cal. 2004)); *see also In re Brady*, 101 F.3d at 1173 ("A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." (citation omitted)); *Issacs Cars, Inc. v. Woods (In re Woods)*, 418 B.R. 226, 230 (Bankr. W.D. Ky. 2009) ("To succeed on a theory of embezzlement, the Plaintiff must prove that '(a) the Debtor appropriated funds for his own benefit, and (b) he did so with fraudulent intent or deceit.'" (citation omitted)).[1] Furthermore, "[b]oth the intent and the actual misappropriation necessary to prove embezzlement may be shown by circumstantial evidence." *In re Sedlacek*, 327 B.R. at 880 (quoting *Goodmar, Inc. v. Hamilton (In re Hamilton)*, 306 B.R. 575, 582 (Bankr. W.D. Ky. 2004)); *see also Cash America Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 116-17 and n.7 (B.A.P. 6th Cir. 2007) (concluding that misrepresentational fraud is not required, but rather a broader definition of fraud applies under § 523(a)(4) which includes "those instances when a debtor is given possession of, or control over, a creditor's property and then decides to wrongfully take the property at some later time").

In this case, Ms. Holt has shown by her unrefuted affidavit the first required element of an embezzlement cause of action, that she entrusted approximately $1,821,578.68 with the Debtor for investment in MetLife accounts. Her affidavit also establishes the second component of an embezzlement cause of action, that the Debtor through his use of forged checks and IRA distribution forms diverted at least $1,500,881.29, none of which were returned to Ms. Holt. In the Debtor's deposition testimony, he acknowledges that he was never given the authority to sign Ms.

---

[1] Establishing a prima facie case of embezzlement "does not require the existence of a fiduciary relationship." *In re Sedlacek*, 327 B.R. at 880 (citing *Jones v. Hall (In re Hall)*, 295 B.R. 877, 882 (Bankr. W.D. Ark. 2003)); *see also In re Pierron*, 448 B.R. at 240 ("The phrase 'while acting in a fiduciary capacity' applies only to the words 'fraud or defalcation'; embezzlement and larceny are separate grounds for non-dischargeability under § 523(a)(4) whether or not a fiduciary relationship existed." (citation omitted)).

7

Holt's name to any document and concedes that it was "possible" that he signed the numerous IRA distribution forms and checks used to withdraw funds from her accounts.

Lastly, the record in this case demonstrates the third necessary element of embezzlement, intent to deceive or defraud. The Plaintiffs' statement of undisputed facts recites that "[the Debtor] intended to, and in fact did, defraud Holt of the funds she placed with MetLife Securities, Inc. by using the funds for his own use and benefit instead of for the use for which the funds had been entrusted to [the Debtor]."

The court turns next to Ms. Smith's claim against the Debtor and the conclusion that the evidence establishes a basis for nondischargeability under § 523(a)(2)(A). The Sixth Circuit Court of Appeals has stated that a creditor must demonstrate the following elements under § 523(a)(2)(A): "(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss." *In re Rembert*, 141 F.3d at 280-81 (citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir. 1993)). An express misrepresentation is not required. *See Schafer v. Rapp (In re Rapp)*, 375 B.R. 421, 433 (Bankr. S.D. Ohio 2007) ("[A]n express misrepresentation by the debtor need not be shown to establish a nondischargeable debt under § 523(a)(2)(A) based on false pretenses or actual fraud."); *cf. Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 876-77 (B.A.P. 6th Cir. 2001) (concluding that in situations where the defendant has engaged in "actual fraud" under § 523(a)(2)(A), but has not made an express misrepresentation, the plaintiff is not precluded from establishing nondischargeability by *Rembert*). Section 523(a)(A) also encompasses "false pretense," an " implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a 'false representation' which is an express misrepresentation." *In re Sedlacek*, 327 B.R. at 887 (quoting *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003)); *see also Taylor v. Allen (In re Allen)*, No. 10-5004, 2011 WL 1048241, *5 (Bankr. E.D. Tenn. Mar. 18, 2011) ("Undeniably, a debtor's silence and intentional non-disclosure of a material fact may constitute a misrepresentation actionable under § 523(a)(2)(A)." (citing *In re Copeland*, 291 B.R. at 760)).

The evidence in this case establishes the following facts. As set forth in her affidavit, Ms. Smith provided $126,000 to the Debtor, and she specifically directed that the money be deposited into an authorized MetLife investment. In his answer to the complaint, the Debtor states that he has numerous pieces of correspondence with Ms. Smith indicating that she did not believe that her funds were invested in a MetLife account. The Debtor does not set forth the dates of this alleged correspondence, and it is unclear whether they would directly contradict Ms. Smith's statement that she instructed that her $126,000 check be invested in a MetLife account at the time she gave it to the Debtor. To the extent that Ms. Smith's subsequent beliefs are relevant, the Debtor has failed to submit the referenced correspondence in opposition to the Plaintiffs' motion, and his mere allegation of these facts in his answer is insufficient to refute Ms. Smith's affidavit or to create a material issue of fact for trial. *See, e.g., Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 256 (6th Cir. 1998) ("opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing there is a genuine issue for trial"). Ms. Smith's unrefuted affidavit additionally states that the Debtor instructed Ms. Smith to make the investment check payable to Horizon Holdings, Inc., a corporation owned or controlled by the Debtor and not affiliated with MetLife, and that he failed to advise her of his connection with the corporation. This testimony is confirmed in part by the Debtor's own deposition testimony in which he states that he deposited the check from Ms. Smith into Horizon Holdings' checking account for which he was a signatory. Lastly, Ms. Smith's affidavit establishes that she has not received any reimbursement for her losses, which were incurred as a result of the Debtor's misappropriation of her investment funds.[2]

Applying the *Rembert* framework to the present case, the evidence demonstrates the first required component of § 523(a)(2)(A), a false pretense or misrepresentation by the Debtor. By

---

[2] In addition these allegations regarding a claim by Ms. Smith arising out of a $126,000 check, the complaint also asserts recovery by Ms. Smith concerning alleged unauthorized loans in the amount of $150,000 that the Debtor allegedly converted from a life insurance policy that Ms. Smith purchased on the life of her mother. This claim is not referenced in any of the filings made by the Plaintiffs in connection with their summary judgment motion. Because the Plaintiffs' motion seeks summary judgment on their nondischargeability claims, the court assumes that Ms. Smith has abandoned that claim.

accepting from Ms. Smith the check that was given with the express instructions that the money would be deposited into a MetLife account, the Debtor impliedly represented that the money would go into that type of account. His failure to advise Ms. Smith that Horizon Holdings, Inc. was not affiliated with MetLife created a false impression regarding the actual investment of her funds.

The second *Rembert* element, whether the Debtor possessed an intent to defraud, is measured by a subjective standard. *In re Rembert*, 141 F.3d at 281 (citing *Field v. Mans*, 526 U.S. 59, 70-72, 116 S. Ct. 437 (1995)). "What courts need to do is determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent." *Id.* at 282 (quoting *Chase Manhattan Bank v. Murphy (In re Murphy)*, 190 B.R. 327, 334 (Bankr. N.D. Ill. 1995)); *see also In re Sedlacek*, 327 B.R. at 887-88 ("Fraudulent intent may be inferred by examining the Debtor's conduct to determine if he presented the Plaintiff with 'a picture of deceptive conduct indicating an intent to deceive.'" (quoting *In re Copeland*, 291 B.R. at 766)). That standard is met in this case. The Debtor's silence as to where Ms. Smith's funds were actually going, after she had specified that they were to go into a MetLife account, leads to the inference that the Debtor acted with the intent to deceive Ms. Smith.

The third *Rembert* element requires justifiable reliance by the plaintiff on the debtor's false representation. *In re Rembert*, 141 F.3d at 280-81 (citing *In re McLaren*, 3 F.3d at 961). Stated differently, the plaintiff "must prove that [they] actually relied on the Debtor's representations and, based upon the facts and circumstances [they] knew at the time, such reliance was justifiable." *In re Sedlacek*, 327 B.R. at 888 (citing *In re Copeland*, 291 B.R. at 767). Justifiable reliance may be established even if an investigation by the plaintiff would have revealed the falsity of the representation. *Id.* In the present case, actual reliance is established by Ms. Smith's statement in her affidavit that she relied on the Debtor's representations in giving him the $126,000 check. These representations included the implicit agreement that the money would be invested in accordance with Ms. Smith's directive, in a MetLife account. Moreover, the context of the representations indicate justifiable reliance. The Debtor was a MetLife investment representative and Ms. Smith's brother-in-law. There was no indication from the record of a red flag that should have alerted Ms. Smith that further investigation or verification was needed.

The last *Rembert* element requires the creditor's reliance on the debtor's misrepresentations to be a proximate cause of the loss sustained by the creditor. *In re Copeland*, 291 B.R. at 767. Stated differently, there must be a direct link between the creation of the debt and the alleged fraud in order to satisfy the fourth *Rembert* requirement. *Id.* (quoting *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 n.7 (1st Cir. 2001)). In this case, the direct link between the Debtor's deceit and the loss incurred by Ms. Smith is demonstrated by her statement that she has not received any reimbursement for her losses, presumably because the Debtor directed the funds into an account other than a MetLife account.

IV.

In summary, the court concludes that the debts owed by the Debtor to the Plaintiffs are excepted from discharge under §§ 523(a)(4) and 523(a)(2)(A) of the Bankruptcy Code, respectively as to Ms. Holt and Ms. Smith. Consistent with this memorandum opinion, the court will enter an order granting the Plaintiffs' motion for summary judgment; awarding Ms. Holt a judgment in the amount of $1,500,881.29, which judgment will be excepted from discharge under § 523(a)(4); and awarding Ms. Smith a judgment in the amount of $126,000.00, which judgment will be excepted from discharge under § 523(a)(2) (A).[3] In this regard, the court notes that the Plaintiffs tendered

---

[3] Although the Plaintiffs' brief filed in support of their summary judgment motion did not address the elements of their tort claims for embezzlement and fraud under Tennessee law, their brief did expressly request a determination of liability. As to embezzlement, it has been recognized that Tennessee law defines embezzlement in substantially the same terms as 11 U.S.C. § 523(a)(4). *See Energy Marketing Corp. v. Sutton (In re Sutton)*, 39 B.R. 390, 395 (Bankr. M.D. Tenn. 1984) (citing Tenn. Code Ann. § 39-3-1121). Regarding fraud, the essential elements under Tennessee law are virtually the same as 11 U.S.C. § 523(a)(2)(A), with the exception that the former requires reasonable reliance, a higher standard than § 523(a)(2)(A)'s justifiable reliance. *See Treadwell v. Glenstone Lodge, Inc.*, 459 B.R. 394, 410-11 (Bankr. W.D. Mo. 2011) (citing *McMillin v. Lincoln Memorial University*, No. E2010-01190-COA-R3-CV, 2011 WL 1662544, *5 (Tenn. App. May 3, 2011). In determining whether a plaintiff's reliance was reasonable, several factors are to be considered including the "plaintiff's business expertise and sophistication" and "the existence of a longstanding business or personal relationship between the parties." *Goodall v. Akers*, No. M2010-01584-COA-R3-CV, 2011 WL 721494, *4 (Tenn. App. March 1, 2011). In the present case, the evidence demonstrates that the plaintiff Ms. Smith was looking to the Debtor, a family member, as a professional with superior knowledge regarding investments. Accordingly, her reliance was reasonable. Based on all of the foregoing, entry of judgments in the Plaintiffs' favor is appropriate.

11

with their motion for summary judgment a proposed order that, in addition to granting judgment in the Plaintiffs' favor, also purported to award prejudgment interest, punitive damages, and attorney fees. However, the brief submitted by the Plaintiffs did not address these claims, and no bases for these awards are apparent from the Plaintiffs' statement of undisputed material facts. Accordingly, the Plaintiffs' claims in these regards will be denied.

The only issue remaining in the adversary proceeding is Plaintiffs' alternative theory for relief, whether the Debtor's discharge should be denied under various subsections of § 727(a) of the Code. The court's order will direct that no later than March 5, 2012, the Plaintiffs shall file with the court and serve upon the Debtor a statement indicating whether they plan to go forward with their alternative claim for relief at the scheduled March 7, 2012 trial date.

# # #